## City of Pittsburgh *versus* Irwin's Executors.

1. Where a street is opened under the provisions of the Act of January 6th 1864, Pamph. L. 1131, and its supplements, and in pursuance of said act a bond is filed to indemnify parties whose property is damaged by said opening and an appeal from a report of viewers is certified from the Quarter Sessions to the Common Pleas, under the provisions of the Act of June 13th 1874, Pamph. L. 283, for trial by jury and judgment is therein recovered, the primary fund out of which said judgment is to be paid is that to be raised by the assessment and collection of benefits from the property along the street opened, and this fund must be exhausted before recourse can be had to the bond.

2. The proper proceeding is to remit the record after judgment, from the Common Pleas to the Quarter Sessions, for the purpose of completing the assessment, and handing it over to the city attorney for collection of benefits and payment of damages, and if the damages awarded by the Common Pleas are not thus paid then recourse can be had to the bond filed in the Quarter Sessions.

November 9th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1877, No. 267.

This writ was taken by the executors of Anna H. Irwin, deceased, from an order of the court in the matter of the opening of Forty-seventh street, in the city of Pittsburgh. Said street was ordered to be opened by an ordinance of said city of June 30th 1873, which directed the damages and benefits arising from said opening to be assessed and collected in accordance with the provisions of the Act of January 6th 1864, Pamph. L. 1131, and the several supplements thereto. The viewers assessed the damages to the Irwin property at $3000. The report of the viewers having been confirmed by councils on the 14th of October 1877, the executors of Anna H. Irwin appealed therefrom, as provided by the Acts of 1864 and May 13th 1871, Pamph. L. 840, to the Court of Quarter Sessions of the county. The bond required by the Act of 1864 to be filed by the city to indemnify parties damaged by said opening, was filed in the sum of $15,000, on the 27th of February 1874.

On the 25th of October 1875, the executors of Anna H. Irwin made a demand to the Court of Quarter Sessions for a jury trial as to the assessment of damages for the property taken by the opening of said street, and on the same day the court certified the appeal to the Court of Common Pleas, No. 1, for such trial.

This demand to and order of the Court of Quarter Sessions was made because of the provisions of the constitution, section 8, article 16, viz. : " The General Assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals, made by viewers or otherwise ; and the amount of such damages, in all cases

[City of Pittsburgh *v.* Irwin's Ex'rs.]

of appeal, shall, on demand of either party, be determined by a jury, according to the course of the common law."

The case was tried in the Common Pleas, and a verdict found for the plaintiffs for $12,000, as the amount of damages sustained by the said opening. The case was then taken to the Supreme Court, upon an order of the Common Pleas striking off the case because of the demand for jury trial not having been made within the time fixed by the Act of 13th June 1874; and in reversing this action of the court below, this court said, "This court, proceeding to give the same judgment which the court below ought to have rendered, now give judgment on the verdict for the plaintiff for the damage as found by the jury, viz., $12,000, with costs of suit; and the record is ordered to be remitted to the Court of Common Pleas, No. 1, for execution." The record was remitted to the court below, and thereupon motions were made as follows: "And now, June 2d 1877, comes Thomas S. Bigelow, on behalf of the city of Pittsburgh, defendant in the above-mentioned case, and moves the court for an order certifying the record in said case back into the Court of Quarter Sessions of Allegheny county, for disposition there according to the law in such case made and provided. Whereupon, upon consideration, the court direct the prothonotary to transmit a certified copy of the record, together with the papers in the case, forthwith to the Court of Quarter Sessions of Allegheny county." On June 2d 1877, a rule to show cause why this order should not be granted, was made by the court.

On the same day a motion was made for a rule to show cause why a special writ of execution should not be issued upon the judgment in this case. On July 7th 1877, both of these motions were argued together, and the court, after consideration, discharged the first, and made absolute the second, to which action of the court exception was taken by the defendant.

The city then took this writ, assigning for error the discharge of the first and making absolute the second rule, as above stated.

*Thomas S. Bigelow*, City Solicitor, for plaintiff in error.—The action of the court below abrogates the provision of the Act of Assembly, that the damages shall be assessed upon properties benefited by the street opening. The only right furnished by the constitution is, that the *amount* of damages shall be ascertained by a jury, according to the course of the common law. It was not contemplated that the laws under which the street was to be opened should be set aside.

When the jury in the Court of Common Pleas liquidated the amount of damages to which the Irwin estate was entitled the record of that fact should have been ordered back into the Court of Quarter Sessions, and the powers of the Quarter Sessions under the Acts of 1864 and 1871 executed in having the damages thus ascertained

assessed by a board of viewers upon properties benefited by the street opening.

In the event of a failure of the viewers to find benefit sufficient to pay the damages, if possession had not been taken under the Act of 20th of March 1873, the street opening would have to be abandoned because of the failure of the law to execute itself and the party left in his original attitude and not disturbed in the least in his rights. If possession had been taken under the Act of 1873, the only remedy which he would have would be in an action upon the bond of the city filed in the Quarter Sessions for the express purpose of securing such parties.

*Hill Burgwin, contra*, did not present a paper-book.

Mr. Justice STERRETT delivered the opinion of the court, January 7th 1878.

The questions presented by the record in this case arise under proceedings instituted by the plaintiff in error, for the opening of Forty-seventh street in the city of Pittsburgh. They will be more readily understood by briefly referring to the Acts of Assembly relating to the subject of opening streets.

By the first section of the Act 6th January 1864, the councils are authorized to lay out and open new streets, lanes and alleys whenever they deem the same necessary, and to levy and collect the value of property thus taken, or the damages done to property thereby, by an assessment upon the properties which may be benefited by such improvement. After an ordinance has been passed for opening a street, the act prescribes in detail the duties of the board of viewers, who, when their assessment of damages and benefits is completed, are required to report the same to councils. It is then made the duty of councils to hear any appeals or further complaints made by any person aggrieved by the report of the viewers, with power to recommit the same for further action, or to quash the proceedings. When the report is finally acted on by councils, any person aggrieved may appeal to the Court of Quarter Sessions, upon whose order the clerks of councils are required to certify to the court all the papers and proceedings in the case, " and thereupon the said court shall take such action in the premises as they may think right and proper, and shall have power to hear evidence, to modify, correct and approve said report or quash the whole proceedings, or to appoint new viewers, with like power to modify, correct and approve their report or quash their proceedings ; and in case of an appeal to court, it shall direct who shall pay the costs of the appeal."

It is also provided, " that after the final approval by councils, or, of the court, in cases of appeal, the plot and report of the viewers shall be handed over to the city attorney to collect the assessments

[City of Pittsburgh *v.* Irwin's Ex'rs.]

and pay the damages." The duties of the city attorney, as to filing liens, and promptly enforcing payment, &c., are fully defined.

The supplement of March 20th 1873, provides that in case possession is taken of the street " before the assessment of damages and benefits for the opening shall have been made and approved, it shall be the duty of the city to file in the office of the clerk of the Court of Quarter Sessions, the bond of the city in such amount as shall be fixed by the court, conditioned to indemnify and save harmless all the parties who may be damaged, from all loss or damage by reason of the opening, widening, &c., with provision that said bond shall become void on the final confirmation of the report of viewers and the payment of all damages therein assessed." In the present case a bond in $15,000 was given, approved by the court and filed on the 27th February 1874, before possession was taken of the street by the city authorities.

The Act of 13th June 1874, Pamph. L. 283, passed for the purpose of carrying into effect the 8th sect. of the 16th art. of the constitution, provides for appeal by either party, and trial by jury in the Court of Common Pleas, in " cases of damages assessed against any municipal or other corporation or individual or individuals, invested with the privilege of taking private property for public use, for property taken, injured or destroyed, by the construction or enlargement of their works, highways or improvements," &c.

In this case the proceedings of councils and the board of viewers were in conformity to the acts above referred to. The damages awarded the defendants in error were assessed by the viewers at $3000. Within ten days after the approval of the report by councils, they appealed to the Court of Quarter Sessions, and on the 18th of October 1874 all the papers and proceedings in the case were duly certified by the clerk of councils and filed in court. On the 23d of the same month they demanded a trial by jury, which was granted, and all the proceedings were certified into the Court of Common Pleas for the purpose of having their claim for damages determined by a jury. The trial resulted in a verdict in favor of the defendants in error for $12,809.50. The court refused to enter judgment on the verdict and dismissed the proceedings for supposed want of jurisdiction. A writ of error was taken to this court and on the 2d January last the order of the court below was reversed and judgment entered here on the verdict in favor of the present defendants in error, and the record remitted to the court for execution. After the record was returned a rule was granted at the instance of the city of Pittsburgh to show cause why the record and papers should not be certified back to the Court of Quarter Sessions; and at the same time a rule was granted at the instance of the defendants in error to show cause why a special writ of execution should not be issued on the judgment. The latter rule was made absolute and the former discharged. These orders were

[City of Pittsburgh *v.* Irwin's Ex'rs.]

excepted to and are here assigned for error.   The question raised by the assignments of error is whether the defendants are entitled to their special execution for the purpose of collecting, directly from the city of Pittsburgh, the damages awarded them by the jury ; or whether, after the damages have been determined by the court and jury, according to the course of the common law, the record, including the finding, should not be remitted to the Court of Quarter Sessions for further proceedings, in accordance with the law regulating the assessment and collection of benefits and the payment of damages.

It is contended by the plaintiffs in error that the several acts on the subject must be construed together; that nothing more was intended by the Act of 1874 than to give the party aggrieved the right of trial for the purpose of having his damages determined by a jury, instead of by viewers, or by the court; that when this has been accomplished, it becomes the duty of the Court of Quarter Sessions, with the aid of viewers or otherwise, to proceed and finally adjudicate all questions of benefits and damages, except so far as they may have been settled by verdict and judgment of the Common Pleas.   It appears to us that this is the only way in which the harmony of the system can be preserved.   The theory on which the legislation on the subject of opening streets proceeds, is that the advantages or benefits, to be derived from the opening, exceed the damages that will be sustained ; and that sufficient benefits will be found, assessed and collected to pay all damages.   If this should prove not to be the case, the city would of course be liable for the deficiency.   The primary fund, however, out of which damages are intended to be paid, is that raised by the assessment and collection of the benefits.   Formerly, under the proviso to the first section of the Act of January 6th 1864, the street could not be opened, or private property taken for street purposes until the benefits and damages were determined and the latter paid ; but, as we have seen, the supplement of March 20th 1873, provides for giving security in case the city desires to take possession and open the street before the damages and benefits are assessed.   Security was given in this case ; and, if the record is remitted to the Quarter Sessions for the purpose of completing the assessment and handing it over to the city attorney for collection of benefits and payment of damages, and the damages awarded to the defendants in error are not thus paid, they will have recourse on the bond filed in the Quarter Sessions for their benefit.   It appears to us that the construction contended for by the defendants in error would lead to great difficulty and confusion, if not to the destruction of the entire system.   If one party claiming damages, may, as soon as he obtains a verdict and judgment, proceed by execution to collect the amount directly from the city, all may do so, and the result might be that the city would be required to advance all the damages occasioned by the opening of streets, &c.   This was never intended.

[City of Pittsburgh v. Irwin's Ex'rs.]

We are of opinion that the record should be certified to the Quarter Sessions, so that the assessment may be completed and handed to the city attorney for the purpose of collecting the benefits and applying the same to the payment of the damages awarded to the defendants in error and others.

The latter clause of the judgment of this court on the former writ of error is not in entire harmony with this view of the case. The record was ordered to be remitted to the court below " for execution." This was done for the reason that no question was then raised as to the propriety or necessity of further proceedings in the Quarter Sessions. It can be amended by striking out the words " for execution," and this may be considered as done.

> The order of the Court of Common Pleas awarding the special writ of execution is reversed and set aside, and the order discharging the rule to show cause why the record and proceedings should not be certified to the Court of Quarter Sessions is also reversed, and the rule reinstated; and it is ordered that the record be remitted to the court below for further proceedings.